UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

In re:

NADA F. ZAOCHNEY,

        Debtor.

Case No. A11-00603-DMD
Chapter 7

**Filed On
12/12/11**

### MEMORANDUM ON MOTION TO VALUE SECURITY INTEREST

The debtor filed a motion to value the security interest of Alaska USA Federal Credit Union in a 2008 Chevrolet Impala. Alaska USA contends that the Impala is encumbered by a purchase money lien as well as by sums due on a credit card, through dragnet clauses found in its loan documentation. The debtor alleges that the dragnet clauses are unenforceable. I agree with Alaska USA and find the dragnet clauses valid. The debtor's motion will be granted, in part. Alaska USA's secured claim is valued at $12,950.00. However, the vehicle is collateral for both the debtor's car loan and her credit line loan.

The debtor signed a two-page credit line loan agreement with Alaska USA on September 12, 2009.[1] On the first page, above the debtor's signature, the agreement had bold headings for a series of 11 paragraphs. One paragraph, headed "Cross-Collateralization," states:

> Collateral pledged as security for other loans I
> have now or in the future with Credit Union will
> also be security for this agreement. This cross-
> collateral provision does not apply to my principal

---

[1] Debtor's Mem. in Supp. of Mot. to Determine Value of Security, filed Nov. 2, 2011 (Docket No. 20), Ex. A.

> dwelling or household goods pledged as security for other loans.[2]

The debtor says she signed this agreement because employees at Alaska USA told her it was a one-time offer to obtain credit at a favorable rate. She alleges that there was no discussion of the cross-collateral provision when she signed the agreement. She says personnel at the credit union also told her during this visit that she could obtain a car loan.

Ten days after receiving the credit line, the debtor purchased a car from Alaska Sales and Service. She financed the purchase through Alaska USA. The retail installment sales contract provided that the "Seller intends to assign this contract to Alaska USA Federal Credit Union."[3] The sales contract had a large box in the lower right hand corner with Alaska USA's logo.[4] It stated: "Questions?" and listed Alaska USA's P.O. Box and two separate phone numbers.[5] In her supporting memorandum, the debtor confirms that she knew, at the time she made the purchase, that the financing would be through Alaska USA.[6]

On the front page of the sale contract, above the box containing the debtor's signature, is a provision regarding a security interest. It states:

> Security Interest. You are giving a security interest in the goods or Property Being Purchased as described above. As permitted by law the goods or Property Being Purchased secures other obligations now or hereafter owed by you to the

---

[2] *Id.*, Ex. A at 1.

[3] *Id.*, Ex. B at 1.

[4] *Id.*

[5] Debtor's Mem. (Docket No. 20), Ex. B at 1.

[6] Debtor's Mem. (Docket No. 20), at 2.

2

> Creditor and other Collateral held by the Creditor, including funds on deposit with the Creditor, secures this Contract (see reverse side under Security).[7]

The reverse side of the sales contract contains a paragraph in fine print labeled "Security." It provides, in part:

> As provided by law, the Collateral for this contract secures other obligations you owe now or later to the Creditor, and other Collateral the Creditor presently holds or later obtains, also secures this contract. This cross-collateralization provision does not cover or extend to your principal dwelling or household goods pledged as security for other loans.[8]

The debtor filed for chapter 7 relief on August 4, 2011.[9] The only creditor listed on Schedules D and F is Alaska USA. The debtor lists two secured debts owed to the credit union: a mortgage on a residence for $220,000.00 and her obligation on the 2008 Chevrolet Impala of $12,000.00.[10] She also lists two unsecured debts owed to the credit union: a deficiency balance of $4,836.22 on a repossessed 2005 Chevrolet Trailblazer and $5,000.00 for her credit line.[11]

The debtor sought to reaffirm her car loan. Alaska USA places a value of $12,950.00 on the vehicle and the debtor does not dispute this. Alaska USA contends the

---

[7] *Id.*, Ex. B at 1.

[8] *Id.*, Ex. B at 2.

[9] Ch. 7 Petition, filed Aug. 4, 2011 (Docket No. 1).

[10] *Id.* at 15 (Sched. D).

[11] *Id.* at 17 (Sched. F).

vehicle secures not only the balance due on the Impala, $11,097.87, but also roughly $1,852.13 of the outstanding balance on the credit line. The debtor disagrees. She contends the Impala is collateral only for the vehicle loan.

In *Alaska Fur Gallery*,[12] I found a cross-collateralization clause in a commercial contract to be valid and enforceable. I went on to state:

> My conclusion here is limited to commercial transactions. Consumer debtors are held to a less stringent standard than commercial debtors. In a consumer transaction, courts may still look to the "true intent" of the parties. Other considerations, such as good faith, overreaching or unconscionability, might also alter the outcome. These are issues left for another day.[13]

According to the debtor, that day has arrived and this court must now strike down the cross-collateral provisions found in the Alaska USA loan documents. I respectfully decline to do so for a number of reasons.

The debtor argues that the Alaska Supreme Court's decision, *Lundgren v. National Bank of Alaska*,[14] applies here. *Lundgren* involved a dragnet clause in a second deed of trust against commercial real property. The court found that such clauses deserved strict scrutiny, and adopted guidelines for determining whether these clauses could be

---

[12] *Alaska Fur Gallery v. First National Bank Alaska (In re Alaska Fur Gallery, Inc.),* 457 B.R. 764 (Bankr. D. Alaska 2011).

[13] *Id.* at 775 (footnotes omitted).

[14] 756 P.2d 270 (Alaska 1987).

4

enforced.[15] However, the court also indicated that UCC policy considerations were not relevant to its determination of the impact of the dragnet clause in the deed of trust.[16]

Lundgren is distinguishable from this case. No deed of trust is involved. While courts in other jurisdictions have applied a *Lundgren*-type analysis to UCC transactions,[17] the Alaska Supreme Court has not. Additionally, *Lundgren* was decided prior to the nationwide adoption of amendments to the UCC in 2001.[18] AS 45.29.204 was amended effective July 1, 2001,[19] fourteen years after the *Lundgren* decision was issued. AS 45.29.204(c) permits a security agreement to "provide that collateral secures . . . future advances or other value, whether or not the advances or value are given pursuant to the commitment."[20] The Official Comment to U.C.C. § 9-204, the corresponding subsection of the Uniform Commercial Code, indicates that *Lundgren's* dragnet rationale is inapplicable to UCC cases. The Comment states:

> **Future Advances; Obligations Secured.** Under subsection (c) collateral may secure future as well as past or present advances if the security agreement so provides. This is in line with the policy of this Article toward security interests in after-acquired property under subsection (a). Indeed, the parties are free to agree that a security interest secures any obligations whatsoever. Determining the obligations secured by collateral

---

[15] *Id.* at 279.

[16] *Id.*

[17] *Alaska Fur Gallery*, 457 B.R. at 771.

[18] *Pride Hyundai, Inc. v. Chrysler Fin. Co., L.L.C.,* 369 F.3d 603, 605 (1st Cir. 2004).

[19] SLA 2000, Ch. 113, § 1.

[20] AS 45.29.204(c) (2011).

5

> is solely a matter of construing the parties' agreement under applicable law. *This Article rejects the holdings of cases decided under former Article 9 that applied other tests, such as whether a future advance or other subsequently incurred obligation was of the same or a similar type or class as earlier advances and obligations secured by the collateral.*[21]

To support her position here, the debtor has cited cases that preceded the 2001 amendments to the UCC.[22] Those cases applied an analysis similar to the one adopted in *Lundgren*. In a recent memorandum disposition, the Ninth Circuit BAP indicated that such cases have been superceded by the adoption of U.C.C. § 9-204.[23] However, the BAP remanded that case for determination of certain factual issues pertaining to enforceability of the cross-collateralization clause. These issues included whether applying the clause would be unconscionable or violate the duty of good faith under the U.C.C.[24]

In a few published decisions issued after the UCC amendments, courts have declined to enforce a cross-collateralization clause on facts distinguishable from the ones found here. In *In re Keeton*,[25] the bankruptcy court found that a dragnet clause in a loan taken out by joint debtors and secured by a vehicle did not operate to secure the credit card liability of just one of the debtors. The court's rationale was that, where the loan defined

---

[21] U.C.C. § 9-204 cmt. 5 (eff. July 1, 2001) (emphasis added).

[22] *In re Kim,* 256 B.R. 793 (Bankr. C.D. Cal. 2000); *In re Gibson*, 234 B.R. 776 (Bankr. N.D. Cal. 1999); *In re Wollin,* 249 B.R. 555 (Bankr. D. Ore. 2000).

[23] *Frontier Fin. Credit Union v. Dumlao (In re Dumlao),* 2011 WL 4501402 at 5 (9th Cir. B.A.P. Aug. 5, 2011) (mem. disposition).

[24] *Id.*

[25] 2008 WL 686938 (Bankr. M.D. Ala. Mar. 10, 2008).

6

"debtor" to mean both of the debtors, there was no indication that the parties intended the vehicle to secure the separate and individual obligations of just one of the debtor.[26] Similarly, in *First National Bank of Izard County v. Garner*,[27] an Arkansas appellate court declined to apply a dragnet clause in a loan taken out by three debtors, secured by real property and a tractor, so that it would encompass a subsequent loan taken out by just one of the debtors individually. The court found that the subsequent loan was entirely unrelated to the first loan and could not have been within the contemplation of the parties at the time the first loan was taken out.[28] Finally, in *Wooding v. Cinfed Employees Federal Credit Union*,[29] the court found that the debtor's credit card debt was not secured by a vehicle that was collateral for an earlier loan. The court found there was no meeting of the minds with respect to the cross-collateralization provisions found in the loan documents because the credit card application signed by the debtor provided only for a security interest in her accounts and there was no evidence that the debtor had received the underlying credit card agreement.[30] Further, the loan documents were ambiguous and there was nothing in them to indicate that the vehicle would secure the credit card account as well.[31]

In other cases decided subsequent to the amendment of the UCC, courts have enforced cross-collateralization provisions in a consumer context, with the result that credit

---

[26] *Id.* at 3.

[27] 167 S.W.3d 664 (Ark. App. 2004).

[28] *Id.* at 667-68.

[29] 872 N.E.2d 959 (Ohio App. 1 Dist. 2007).

[30] *Id.* at 961.

[31] *Id.*

7

lines or deficiency balances were secured by the debtor's vehicle.[32] One court did so in spite of finding that the loans were adhesion contracts.[33] Another court stated that a debtor's failure to read the loan documentation was an inadequate defense to the enforcement of these provisions.[34]

Here, the loan documents signed by the debtor plainly state that collateral pledged for one loan will secure other existing or future loans extended by the credit union. The dragnet provisions are not embedded in fine print and are in simple English. Although I did indicate, in *Alaska Fur Gallery*, that different standards for interpreting a dragnet clause might be applied in consumer transactions,[35] a debtor must provide the court with something more than a citation to *Lundgren* and the assertion of an adhesion contract. The debtor here has not submitted any evidence that the "true intent" of the parties was anything other than as set forth in the documents. Nor has she submitted any evidence of bad faith, overreaching or unconscionability.

I conclude that the dragnet clauses found in the debtor's loan documents with Alaska USA are valid and enforceable. The debtor's vehicle is valued at $12,950.00. Because Alaska USA is owed less than this, $11,097.87, on the vehicle loan, it wants to use the balance of the equity in the vehicle to secure roughly $1,852.13 of the outstanding balance on the debtor's credit line. It may do so under the terms of the loan documents. The

---

[32] *See In re Hobart*, 452 B.R. 789 (Bankr. D. Idaho 2011); *In re Shemwell*, 378 B.R. 166 (Bankr. W.D. Ky. 2007); *In re Nagata*, 2006 WL 2131318 (Bankr. D. Hawaii Jul. 20, 2006); *In re Watson*, 286 B.R. 594 (Bankr. D.N.J. 2002).

[33] *Watson*, 286 B.R. at 602-603.

[34] *Hobart*, 452 B.R. at 801 n.29.

[35] *Alaska Fur Gallery*, 457 B.R. at 775.

debtor's motion to value security interest is granted, in part. Alaska USA's secured claim is valued at $12,950.00.

An order and judgment will be entered consistent with this memorandum.

DATED: December 12, 2011.

> BY THE COURT
>
> /s/ Donald MacDonald IV
> DONALD MacDONALD IV
> United States Bankruptcy Judge

Serve: C. Johansen, Esq.
      D. Clark, Esq.
      K. Battley, Trustee
      U. S. Trustee

12/12/11